PETER HANSEN, appellant, v. FRANKLIN COUNTY, BOARD OF SUPERVISORS and DRAINAGE DISTRICT No. 10 in Franklin County, appellees.

No. 49002

(Reported in 78 N.W.2d 805)

1288

OCTOBER 16, 1956.

Uhlenhopp & Cady, of Hampton, for appellant.

Leming & Hobson and R. L. Saley, all of Hampton, for appellees.

THOMPSON, C. J.—Plaintiff's action was at law. His petition alleges damages because of the widening and deepening of a drainage ditch across his farm in 1953. The ditch was originally constructed in 1913. There is substantial evidence from which the jury could find that the ditch was originally 40 feet wide,

with a four-foot berm and spoil banks from 16 to 20 feet wide on each side. It could have been found from the evidence that the land taken out of cultivation by the original ditch was a strip 80 feet wide, including the ditch proper and the berm and spoil banks on each side. The spoil banks, consisting apparently of earth removed from the ditch, were from 6 to 15 feet high; and there is evidence that it was not possible to cultivate them. As to the deepening of the ditch, there is evidence that the 1953 operation did no more than to restore the original depth.

The ditch after the 1953 work was finished was approximately 80 feet in width. But there were no spoil banks; so that there is evidence from which the jury was justified in finding that the strip of land carved out of plaintiff's farm and removed from cultivation was no wider after the 1953 construction than it had been after 1913. These facts are not all admitted, nor are they without contradiction; but, in view of the questions raised by this appeal, we are concerned only with those which have some substantial support in the evidence.

I. Plaintiff assigns two errors. The first, which is given the major stress, is that the verdict of the jury was contrary to the evidence and the instructions of the court, and so cannot be allowed to stand. Griffith v. Burlington, C. R. & N. Ry. Co., 72 Iowa 645, 34 N.W. 609. This contention is supported in argument by a quotation of Instruction No. 6, which told the jury that the measure of plaintiff's damages, if any, was the difference between the reasonable market value of the farm immediately before and immediately after the improvement of 1953. This instruction also told the jury: "But you are not to take into consideration any benefits or advantages that may have accrued or that may accrue in the future to plaintiff's farm by reason of the establishment of the present drainage improvement."

From this counsel argue that, since the ditch was unquestionably widened and deepened, some damage must have resulted; and the only way in which a verdict of no damage could have been reached must necessarily have been by allowing some benefits from the improvement, contrary to the instruction quoted. But the difficulty with this position is that there is a considerable quantum of evidence that the actual land out of

cultivation was no greater after the 1953 construction than before. The ditch is wider now; but there is much evidence that the spoil banks could not have been cultivated, while the widened ditch has no spoil banks and the land can be farmed to its edge. Perhaps it would be more nearly correct to say that the new improvement has spoil banks but they are leveled off so they can be cultivated.

L. J. Hansen, a farm planter for the Soil Conservation Service since 1948, testified that the spoil banks on the new construction, with a proper amount of fertilizer, should produce as well as the rest of the farm. There is not enough gravel to do any harm. It would produce seed crops better than the rest of the farm, but would need nitrogen to produce corn. Mr. Hansen placed the value of the farm at the same figure before and after the new improvement.

August Friesleben, who lived near the plaintiff's farm and had in fact lived upon it for eleven years, likewise placed the value at the same figure before and after, as did several other farmers and farm owners in the vicinity. It is apparent, therefore, that there is ample competent evidence requiring the submission to the jury of the question whether the farm was substantially damaged by the new improvement. It was not necessary for the jury to consider that the farm had been benefited; the witnesses whose value testimony was permitted to go before it were each confined to the proper rule laid down in Instruction No. 6 above referred to.

But plaintiff says there is evidence that the number of acres in his farm was reduced, and so it necessarily follows that he was damaged. He supports this contention by the testimony of Herluf Hansen, county auditor of Franklin County, who said that the taxable acreage of the farm had been reduced by 4.04 acres after the 1913 construction, and by 7.58 acres after the improvement of 1953. So it is urged that the plaintiff lost 3.54 acres, and necessarily suffered some damage therefor. But it need only be pointed out that the evidence indicates this additional acreage had previously been in the high spoil banks, which were not actually of any value because they could not be cultivated. Likewise, there is testimony from T. F. Matson, the

civil engineer in charge of the project, that "the ditch was not deepened any from its original construction * * *."

Plaintiff's assigned error that the jury disregarded and found contrary to the instructions of the court can be maintained only if there is no other fair construction of the record. In the light of the considerable evidence from which the jury might find the farm was not damaged, without considering or allowing benefits from the improvement, we must find this contention without merit.

II.   The other error assigned is that the court improperly refused to admit into evidence three photographs offered by the plaintiff. These were photographs of the ditch as it was after the improvement in 1953. The plaintiff asked that the jury be permitted to view the premises at the time of the trial, but this request was refused. The plaintiff does not predicate error upon this latter refusal, but does urge that the jury should have been permitted to view the ditch or to see pictures of it, and so the error in denial of admission of the pictures is pointed up and emphasized.

Plaintiff concedes that the general rule is that the admissibility of photographs is within the fair discretion of the trial court. Young v. Blue Line Storage Co., 242 Iowa 125, 132, 44 N.W.2d 391, 395; Ingebretsen v. Minneapolis & St. Louis Railroad Co., 176 Iowa 74, 83, 155 N.W. 327, 330; Nolte v. Chicago, Rock Island & Pacific Railway Co., 165 Iowa 721, 728, 729, 147 N.W. 192, 194; Faivre v. Mandercheid, 117 Iowa 724, 732, 733, 90 N.W. 76, 78, 79.

The rule is well stated, with a pertinent qualification, in Ingebretsen v. Minneapolis & St. L. R. Co., supra, 176 Iowa at page 83, 155 N.W. at page 330: "Whether photographs are to be admitted or excluded is a question very largely, if not entirely, in the discretion of the court, *and this is more emphatically the case where, as we have said, they are intended to perform the office of an illustration or diagram in aid of oral or written testimony, rather than as being, in themselves, independent evidence.*" (Italics supplied.)

In the case at bar the offered photographs were intended to aid and clarify the oral testimony concerning the width and

general appearance of the ditch; they would not have been, in themselves, independent evidence. The trial court excluded them because it thought they would give a one-sided version of the situation, in that while they would disclose the actual appearance of the ditch and its surroundings after the improvement, the jury would have only a much vaguer and more indefinite picture of the construction of 1913 and the adjacent lands. The court thought there would be an element of unfairness in showing actual photographs of the situation after the improvement as against mere word descriptions of appearances before. We cannot say that it abused its discretion in excluding the photographs.—Affirmed.

All JUSTICES concur.